**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

JOE LOUIS FOULKS,

            Plaintiff,

v.                                                   Case No. 20-10302

CITY OF DETROIT, et al.,

            Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
ORDERING ADDITIONAL BRIEFING**

On December 25, 2017, Defendant Detroit Police Officers arrested Plaintiff Joe Faulks for felonious assault after a 911 caller reported that Plaintiff, while standing in the street in front of his Detroit home, had pointed a handgun at a moving vehicle. The criminal complaint against Plaintiff was eventually dismissed. Thereafter, he brought the present action alleging that Defendant officers violated his Fourth Amendment rights by seizing and detaining him without probable cause and by using excessive force in effectuating the arrest. He also alleges that Defendant City of Detroit should be held liable for such constitutional violations because it failed to properly train or supervise its officers. Defendants have now filed a "partial motion [sic] for summary judgment" on Plaintiff's wrongful arrest claim (Count I) and Plaintiff's _Monell_ claim against the City of Detroit (Count III); Defendants do not seek summary judgment on Plaintiff's excessive force claim against Defendant officers. (ECF No. 23.) The court finds a hearing unnecessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons provided below, the court will grant, in part, Defendants' motion for summary judgment.

# I. BACKGROUND

## A. Facts

On December 25, 2017, Defendant officers Jason Lord and Eric Campbell were dispatched to the scene of a possible felonious assault at 6587 Oakman Boulevard, Detroit, Michigan. (ECF No. 28, PageID.186.) The 911 call was placed by Iesha Morgan (Iesha), a witness to some of the events and the mother of one of the alleged victims. (*Id.,* PageID.186-87.) When officers arrived at the scene, they first spoke with Ishea, who told officers that Plaintiff had pointed a handgun at her son as her son drove by Plaintiff's house in his vehicle. (ECF No. 32-6, PageID.638.) Ishea also told the responding officers that she "had issues in the past with" Plaintiff and that such disputes are "ongoing." (The parties here disagree about the origins of the disputes.) (*Id.*)

Preston Morgan (Preston) and Dominique Gibbs, who were both in the vehicle at the time of the incident, returned to the scene and provided initial statements to the responding officers. Preston told officers that he was driving past Plaintiff's house after visiting his mother's home nearby when he observed Plaintiff "pull a handgun from his coat pocket and point it at [Preston]'s vehicle." (*Id.*) Gibbs, who was a passenger in the car, stated that he saw Plaintiff pull a handgun from his coat pocket while standing in the street but stated that "he never seen [sic] the barrel of the handgun point towards the vehicle." (*Id.*)

 Officers made contact with Plaintiff, who was seventy-nine years old at the time of the incident. They recovered a loaded handgun and additional magazine from his coat pocket. (*Id.*) Plaintiff, a CDL license holder, told officers that he had been operating his snowblower in the street at the base of his driveway immediately prior to the

encounter; he stated that he drew pistol from his coat as Preston and Gibbs drove by, but Plaintiff stated that he did "not recall pointing it at the driver." (*Id.*; ECF No. 32, PageID.303.) He told officers that he was involved in an ongoing feud with Preston's family and that Preston had struck Plaintiff's vehicle with his own in the past. (*Id.*) According to the police report prepared by the responding officers, Plaintiff told the officers that he was acting in self-defense because "he believe[d] that vehicle was attempting to either hit him or splash him with snow." (*Id.*)

The responding officers handcuffed and arrested Plaintiff. (Plaintiff has asserted an excessive force claim based on alleged excessively tight handcuffing, Count II, that is not challenged in the summary judgment motion presently at issue.) (*See* ECF No. 1, PageID.8.) The next morning, Defendant Antonio Allen was assigned to investigate the case and prepare information for a warrant application. (ECF No. 32, PageID.307.) Allen prepared an official investigative report of the incident after conducting interviews of Gibbs, Preston, and Ishea. (*Id.*) Preston and Ishea gave statements during the interview that were consistent with what they told responding officers the day before; however, Gibbs, in his follow up statement, expressly indicated that he saw Plaintiff pull a gun out and "point[] [it] at Preston Morgan and myself." (ECF No. 32-6, PageID.685.) Plaintiff refused to be interviewed without an attorney present. (ECF No. 32, PageID.307.)

On December 27, 2017, a warrant for felonious assault was signed by a magistrate, and Plaintiff was arraigned on that charge. (ECF No. 28-8, PageID.269.) Plaintiff was then released on bond. In January 2018, Plaintiff underwent a Preliminary Examination in front of Judge Michael E. Wagner. (*See* ECF No. 28-9, PageID.272-84.)

At this proceeding, Preston Morgan testified that without justification, Plaintiff pulled out his handgun and pointed it at Morgan's vehicle as Morgan was passing him in the street. (*Id.*) After hearing the testimony, Judge Wagner found probable cause to believe that Plaintiff had committed a felonious assault and bound the case over for trial. (*Id.*)

In February 2018, Plaintiff's criminal defense attorney provided to the Wayne County Prosecutor's Office a copy of security camera footage from surveillance cameras located on Plaintiff's residence that shows the alleged incident. (ECF No. 32-7, PageID.692; ECF No. 32-8, Exhibit G.) Plaintiff has also included a copy of the video as an exhibit in the present action. The videos show that Plaintiff does not appear to point the gun at Preston's vehicle as it drives past Plaintiff. (*See* Exhibit G.)

A trial was scheduled for May 10, 2018, but the case against Plaintiff was ultimately dismissed without prejudice on that date. (ECF No. 28-8, PageID.269.) The parties dispute the reason for the dismissal; Plaintiff contends that the prosecutor decided not the pursue the case after viewing the home security camera footage of the incident that Plaintiff provided, while Defendants contend that the case was dismissed "because the critical witness against Plaintiff, Preston Morgan, attended his sister's college graduation in Louisiana instead of trial." (ECF No. 28, PageID.188.)

### B. Procedural History

Plaintiff initiated the present action in February 2020; he brings two Fourth Amendment claims against Defendant officers (wrongful arrest & excessive force) and a related failure to train/supervise municipal liability claim against the City of Detroit. (*See* ECF No. 1.) The original complaint also contained three claims under Michigan law (Counts IV- VII), but this court previously declined to exercise supplemental jurisdiction

4

over such claims. (ECF No. 7.) Defendants now move for partial summary judgment, i.e., only on Counts I & III, leaving Count II for trial or other disposition. (*See* ECF No. 28.)

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party

opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

### III. DISCUSSION

### A. Officer Rossignol

As a preliminary matter, the court concludes it is likely appropriate to grant summary judgment *sua sponte* to Defendant Rossingnol. It appears clear that Rossingnol was included as a Defendant in the present case simply because his name was listed as a responding officer in a supplement attached to Sergeant Allen's investigative report. (*See* ECF No. 32-6, PageID.657.) There is no other indication in the record that officer Rossingnol actually had any involvement in Plaintiff's arrest or the subsequent investigation. Further, Defendant Allen expressly testified in his deposition that the attachment of the supplement mentioning Defendant Rossingnol was an error in the preparation of the paperwork. (ECF No. 32-5, PageID.585 ("Q: Does this supplement have anything to do with Mr. Foulks' case? A: No, it does not").) The parties do not address Defendant Rossingnol in their present briefing. Nonetheless, the court announces its inclination to grant summary judgment to Defendant Rossingnol under Federal Rule of Civil Procedure 56(f)(3). In order to do so, "the losing party must have had notice that the court was considering summary judgment on the claim, as well as a reasonable opportunity to present its arguments and evidence of the claim." *Aubin Indus., Inc. v. Smith*, 321 F. App'x 422, 423 (6th Cir. 2008). The court now provides Plaintiff such notice that it is "considering summary judgment" in favor of officer Rossingnol on all claims. The court will order supplemental briefing on this issue. To

conserve resources, the parties may submit a stipulation in lieu of briefing, assuming they agree with the court's observations.

### B. Unlawful Arrest

The court will next consider the Fourth Amendment unlawful arrest claims brought against Defendant officers. Because Defendant officers were involved at different points in the investigation and warrantless, the court provides a separate analysis.

### i. Eric Campbell and Jason Lord

Plaintiff claims that he was subject to an unlawful arrest because Defendant officers Campbell and Lord arrested him without sufficient probable cause while responding to the 911 call. At the core, Plaintiff contends that the officers' reliance on Preston Morgan's statement—that he saw Plaintiff point a gun at him—was unreasonable given the other information known by the officers at the time of the warrantless arrest. Reviewing the facts known by the officers, however, the court finds that there is no doubt the officers possessed sufficient probable cause to make a warrantless arrest.

Campbell and Lord, like all the Defendant officers in the present case, argue that Plaintiff's Fourth Amendment claim is barred by qualified immunity. To "shield officials from harassment, distraction, and liability when they perform their duties reasonably," courts have devised a two-part test to protect government officials from civil litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Courts consider: "(1) whether the alleged facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was

clearly established." *Rieves v. Town of Smyrna,* 959 F.3d 678, 695 (6th Cir. 2020). "A right is clearly established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.*

The Fourth Amendment protects individuals from search or arrest without probable cause. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564 (1971). "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "[I]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause" regardless of whether he actually committed a crime. *Brooks v. Rothe*, 577 F.3d 701, 706 (6th Cir. 2009). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). The Supreme Court has observed that a "probable cause determination . . . does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Moreover, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999); *see also Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988) (noting that an officer "is under no obligation to give any credence to a suspect's story

[or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause").

In this case, Campbell and Lord arrested Plaintiff without a warrant, based on allegations they learned, which was largely from statements made by people at the scene. So, the court must focus on the facts and circumstances readily available to the officers at the time of the arrest. Plaintiff was arrested for felonious assault, which in Michigan applies to any "person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder." Mich. Comp. Laws § 750.82. Proving felonious assault requires "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v. Jackson,* 487 Mich. 783, 787, 790 N.W.2d 340, 343 (2010) (emphasis and quotation omitted). "The assault must consist of attempted battery or 'an act that would cause a reasonable person *to fear or apprehend an immediate battery*,' and that the defendant must have intended to injure or cause fear of immediate battery." *United States v. Harris*, 853 F.3d 318, 320-21 (6th Cir. 2017) (quoting *People v. Micsak*, No. 308317, 2013 WL 275906, at *2 (Mich. Ct. App. Jan. 24, 2013)) (emphasis added).

The police investigative report, prepared on the date of the incident by Defendant Campbell, summarizes the evidence the officers obtained on the scene—concerning which there has been no factual contradiction presented—and demonstrates overwhelming support for Defendants' on-scene probable cause determination. (*See*

9

ECF No. 32-6, PageID.638.) The report shows that the officers spoke to at least four individuals, including Preston Morgan (alleged victim), Preston's boyfriend Dominque Gibbs (passenger in victim's car), Preston's Mother Iesha Morgan (witness), and Plaintiff Foulks. All four individuals indicated that Plaintiff was operating a snowblower in the street, and that he pulled out of his pocket a loaded handgun as Preston drove past Plaintiff. (*Id.*) Officers further corroborated these statements by locating the loaded handgun, and more, on Plaintiff's person.

Because Plaintiff readily admitted to facts constituting a portion of the elements of felonious assault, responding officers only needed to gather evidence indicating that Plaintiff had caused Preston Morgan to "reasonably apprehend imminent battery." *See Jackson,* 487 Mich. at 787, 790 N.W.2d at 343. The crux of Plaintiff's claim against Campbell and Lord is that the only evidence officers obtained establishing "a reasonable apprehension of imminent battery," as required for felonious assault, was Preston's testimony that Plaintiff had *pointed* a gun at him as he drove by Plaintiff. Plaintiff acknowledges that probable cause can be established from the testimony of a single eyewitness. *See Legenzoff v. Steckel,* 564 F. App'x 136, 142 (6th Cir. 2014) (citing *Ahlers*, 188 F.3d at 371) (noting that "a single [eye]witness identification is sufficient to establish probable cause" unless "at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation") (quotation marks omitted).

Plaintiff argues that Campbell and Lord had "an apparent reason . . . to believe" that Preston was "lying" or "was mistaken in his recollection." (ECF No. 32,

PageID.313.) Specifically, Plaintiff contends that Preston's witness statement was contradicted by competing accounts provided contemporaneously by Gibbs—who told the officers at the time that "he never seen [sic] the barrel of the handgun pointed towards the vehicle"—*and* Plaintiff, who stated that did "not recall pointing [the gun] at the driver." (ECF No. 32-6, PageID.638.) Plaintiff also points to video from Plaintiff's home security system of the incident in question that was later provided to the Wayne County Prosecutor by his counsel on February 6, 2018 (about a month after Plaintiff's preliminary examination) that he contends shows that he did not actually point his gun at Preston's vehicle. (ECF No. 32-7, PageID.692; ECF No. 32-8, Exhibit G.)

The court finds that the defendant-officers here reasonably concluded that the "totality of the circumstances" known to them at the scene surpassed "the low bar of probable cause" and supported a belief that Plaintiff had probably committed a crime justifying his warrantless arrest. *See United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021); *see also District of Columbia v. Wesby*, ―― U.S. ――, 138 S. Ct. 577, 586 (2018) ("Probable cause is not a high bar.") (quotation omitted).

First, Gibbs' statement given to Defendant officers at the scene did not directly contradict Preston's statement. Gibbs corroborated that Plaintiff had pulled a gun while standing in the residential side street as Preston drove past, and given the momentary nature of the incident, the officers could have reasonably concluded that Gibbs simply did not see where Plaintiff pointed the handgun. Likewise, Plaintiff admitted to Defendant pulling out from his coat a handgun as Preston drove past, but that he "*did not recall* pointing the weapon at the driver"—not exactly an unequivocal denial. (ECF No. 32-6, PageID.638.) Regardless, case law is clear that the officers are not required

to completely "resol[ve] conflicting evidence" when making an on-scene probable cause determination. *Gerstein*, 420 U.S. at 121. Plaintiff argues that the officers should have discounted Preston's witness statement because the officers knew that Preston's mother, Ishea Morgan, had an ongoing feud with Plaintiff. But the ongoing feud could also reasonably be viewed as providing a likely motive for Plaintiff's assaultive conduct, thereby strengthening probable cause for an arrest. Because such background information logically cuts both ways, on balance, it would not significantly alter a reasonable officer's probable cause calculation. Further, any subsequently obtained security camera footage is irreverent to assessing the officers' probable cause determination *at the time of the warrantless arrest*. There is no indication that the officers even knew that footage of the event existed at the time of the arrest. And later-discovered contradictory evidence not within the grasp of the officers is irrelevant; encountering differences among eye-witness accounts is common, and unless the differences are both known to the officers and dramatically exculpatory, do not negate the facts upon which the officers relied for their conclusions.

Second, as articulated, Plaintiff's self-defense claim was not strong enough that any reasonable officer could conclude it overshadowed other evidence available to the officers. When officers spoke with Plaintiff at the scene, he admitted to pulling a handgun while standing in the street as Morgan drove by because he "believe[d] the vehicle was attempting to hit him *or splash him with snow*." (ECF No. 32-6, PageID.638 (emphasis added).) As Judge Michael Wagner concluded when conducting Plaintiff Foulks' preliminary exam, "Mr. Foulks' response . . . that [he feared] someone might splash him . . . certainly, . . . wouldn't rise to the level that you would have the legal

authority to use a weapon to defend yourself."[1] (ECF No. 28-9, PageID.278.) Because Plaintiff's own statement at the scene greatly undercut his self-defense claim, a reasonable officer would not have concluded that Plaintiff's self-defense was strong enough that it could outweigh other evidence in a totality of the circumstances analysis.

Third, Plaintiff's probable cause argument is built on the flawed assumption that a felonious assault charge in Michigan *requires* that a gun be directly pointed at an alleged victim. The plain language of the statute contains no such explicit requirement. *See* M.C.L. § 750.82. As the Michigan Court of Appeals recently indicated, albeit in an unpublished opinion, there is no Michigan legal "authority in support of the proposition that felonious assault involving a firearm requires proof that the firearm was actually pointed at a victim." *People v. St. Clair*, No. 331183, 2017 WL 2791466, at *1 (Mich. Ct. App. June 27, 2017) ("We can imagine numerous scenarios where, under the totality of the circumstances, the crime of felonious assault could be accomplished absent an offender directly pointing a weapon at a victim."). So, even if the court assumes *arguendo*, that the arresting officer did not find evidence suggesting that Plaintiff actually pointed his gun directly at Preston, a reasonable officer could still have concluded that probable cause existed for the crime of felonious assault. At the time of his arrest, it was undisputed that Plaintiff quickly produced his handgun while at close range to the victims and their vehicle as they drove past him. Given the speed at which events unfolded, such an action could readily have been enough to cause "fear or

---

[1]    Plaintiff's testimony regarding his recollection of what he told officers at the scene is not particularity clear, but there is no indication in his deposition testimony that he expressly denied making such a statement. (*See* ECF No. 32-2, PageID.338-39 ("I might have worded it that way.").

apprehen[sion] of an immediate battery," creating probable cause for an arrest. *See Harris*, 853 F.3d at 320-21.

In sum, the court unequivocally concludes that Plaintiff's Fourth Amendment rights were not violated by Defendants' decision to arrest Plaintiff without a warrant. *See Lester*, 986 F.3d at 610 ("As a general matter, [Plaintiff]'s fine-tooth combing over every detail seems more suited for arguments to the jury about why the government [could] not prove its case beyond a reasonable doubt than arguments to us about why probable cause did not exist for the government to bring that case."). And since Campbell and Lord's investigative involvement in the case apparently ended after his arrest—the record is undisputed that Sergeant Antonio Allen took over any further investigation of the case the following day (*see* ECF No. 32-5, PageID.563-64)—no juror could find that either arresting officer violated Plaintiff's Fourth Amendment rights through a wrongful arrest. Therefore, Campbell and Lord are entitled to summary judgment on Plaintiff's wrongful arrest claim (Count I) and are also entitled to qualified immunity on the issue.

### ii. Sergeant Antonio Allen

It is undisputed that Defendant Allen was not involved in Plaintiff's original arrest and that he only became aware of the case when he was assigned to investigate Plaintiff the following day, on December 26, 2017. (*Id.*, PageID.563.) Because Defendant Allen's alleged failure to investigate the criminal case preceded prosecutors' request for a warrant and Plaintiff's December 27th arraignment in Michigan court (*see* ECF No. 28-8, PageID.269; ECF No. 32-6, PageID.651), the parties appear unsure as to whether Plaintiff's claim against Defendant Allen would constitute a traditional Fourth Amendment wrongful arrest claim *or* a Fourth Amendment malicious prosecution claim.

(*See* Defendants' Brief in Support of SJ, ECF No. 28, PageID.193 (interpreting Plaintiff's complaint as containing a federal malicious prosecution claim); Plaintiff's Response Brief, ECF No. 32, PageID.316 (stating that its complaint does "not set forth a federal malicious prosecution claim")). The parties' collective confusion is understandable given that the law surrounding Fourth Amendment malicious prosecution claims in this circuit has evolved substantially in recent years. *See Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (recounting the "winding path" taken by the Sixth Circuit in attempting to define Fourth Amendment malicious prosecution cause of action district from a wrongful arrest claim). But in the present case, the court need not determine which Fourth Amendment cause of action best encapsulates Plaintiff's claim against Defendant Allen because, as the Sixth Circuit has noted, "the presence of probable cause for a prosecution or pretrial detention dooms any Fourth Amendment claim." *Id.* at 609 (citations omitted); *see also Thompson v. Clark*, --- S.Ct. ---- No. 20-659, 2022 WL 994329, at *4 (U.S. Apr. 4, 2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, is the wrongful initiation of charges without probable cause.").

And because the court has already found that Defendants Campbell and Lord possessed probable cause to arrest Plaintiff for felonious assault, in order to bring a successful claim against Defendant Allen, under either a wrongful arrest or malicious prosecution theory, "[Plaintiff] must prove that the [information that Defendant learned] . . . 'dissolved' the probable cause that initially supported [Plaintiff]'s arrest." *Jones v. Clark Cty., Kentucky*, 959 F.3d 748, 773 (6th Cir. 2020) (Murphy, J., concurring) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 747, 750 (6th Cir. 2006)). The court finds, as

a matter of law, that Defendant Allen did not discover any information that would lead a reasonable officer to conclude that probable cause had "dissolved" with regards to Plaintiff.

When Defendant Allen began investigating the case the day after Plaintiff's arrest, he conducted a canvas of the neighborhood looking for additional witnesses or neighboring homes with cameras, but he "was unable to make contact with anybody who saw the incident" or could provide footage. (ECF No. 32-5, PageID.574.) Allen conducted more formal interviews with the known witnesses of the incident, including Iesha Morgan, Preston Morgan, and Dominque Gibbs, while Plaintiff declined to be interviewed without his attorney present. (ECF No. 32-5, PageID.564; ECF No. 32-6, PageID.677.) In her interview, Iesha stated that although she did not personally see Plaintiff aim his gun at Preston's car, but she recounted that her neighbor "Mark Johnson" had told her he had witnessed Plaintiff pointing a gun at Preston. (ECF No. 32-6, PageID.680.) Preston again recounted that he saw "Mr. Foulks reach into his coat pocket, take out a black handgun, and point it at my car." (*Id.*, PageID.689.) When interviewed by Defendant Allen, Mr. Gibbs stated that Plaintiff "pointed the gun at us and the car" (*Id.*, PageID.686.), which as Plaintiff points out, conflicted with Gibbs' statement to officers at the scene in which Gibbs told responding officers that he never saw the gun pointed at the vehicle. In his deposition, Defendant Allen conceded that he never directly questioned Gibbs about the discrepancy between his two statements. (*See* ECF No. 32-5, PageID.567.) But records produced during discovery indicate that the investigative report Allen produced regarding the incident included both Gibbs'

original statement to the arresting officer and the differing statement he gave in the interview the next day. (*See* ECF No. 32-6, PageID.626, 685.)

While Plaintiff implicitly concedes that Allen cannot be held liable for Campbell and Lord's original decision to arrest him, Plaintiff argues that Allen still violated Plaintiff's rights by failing to conclude during his investigation that police lacked probable cause to hold or charge Plaintiff. Plaintiff argues that Allen should have concluded that Gibbs' inconsistent statements further undermined the arresting officers' original probable cause determination, and Plaintiff argues that Allen should have more thoroughly interrogated the witnesses to determine "if Preston Morgan had attempted to run Mr. Foulks over." (ECF No. 32, PageID.308.)

Again, as the court has already noted, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. So, to the extent Plaintiff's claim against officer Allen is based on the idea that Defendant Allen should be held liable for not doggedly re-investigating Plaintiff's self-defense claim, that argument clearly fails as a matter of law. Furthermore, the fact that Gibbs later provided a conflicting witnesses statement, indicating that he actually saw Plaintiff point a gun at the car, does not come close to "dissolving" the probable cause supporting Plaintiff's arrest. While Gibbs' changing story probably reduces his credibility as a witness, his credibility was not central to the officer's original probable cause determination, which by Plaintiff's admission relied mainly on Preston's Morgan's witness statement and the statement provided by Plaintiff himself. And there is no indication that Defendant Allen omitted Gibbs' two inconsistent statements from his reports which were used in the warrant

17

application and arraignment proceedings. To the contrary, the record establishes that information was properly included. Because Defendant Allen did not learn information during his initial investigation that was sufficient to "dissolve" probable cause, the court concludes that Defendant Allen is also entitled to qualified immunity and summary judgment on Count I of Plaintiff's complaint. *See Jones*, 959 F.3d at 773.

## C. Municipal Liability — *Monell* Claim

Plaintiff's complaint also contains a *Monell* claim against Defendant City of Detroit (Count III), alleging it is liable because it "permitted customs, practices, and/or policies which resulted in the violations of Plaintiff['s]" Fourth Amendment right to be free from arrests "without probable cause, *and from* the use of excessive force against citizens." (ECF No. 1, PageID.9 (emphasis added).) The complaint alleges that the City adopted customs and practices that led to the constitutional violation and failed to adequately train or supervise Defendant officers. (*Id.*, PageID.10-11.)

*Monell* liability may arise "when execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [ ] injury." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). *Monell* claims provide an avenue for municipal liability for claims brought under § 1983. But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty.*, 205 F.3d 867, 879 (6th Cir. 2000)).

The parties' respective summary judgment arguments regarding Plaintiff's *Monell* claim address completely different undergirding factual issues. Defendants' motion for summary judgment argues that "there is no evidence that the City was aware of

18

widespread constitutional violations of the Fourth Amendment right to be *free of arrest or prosecution without probable cause*." (ECF No. 28, PageID.198.) While Plaintiff's response contends that "there is evidence of deliberate indifference and an inadequate training program with handcuffing elderly individuals and loosening the handcuffs of an arrestee who complains they are too tight and injured by them, which is clearly related to Plaintiff's injury by the City of Detroit." (ECF No. 32, PageID.318.) In short, Defendants appear to be arguing that there can be no *Monell* claim against the City based on Defendants' wrongful arrest, while Plaintiff does not contest this point but instead argues there is evidence creating a question of fact stemming from the underlying Fourth Amendment excessive force claims on which Defendants do not seek summary judgment.

To the extent Plaintiff pursues a *Monell* claim based on wrongful arrest or malicious prosecution theory, his claim cannot proceed because the court has found that Defendant officers acted with probable cause when they investigated and arrested Plaintiff for felonious assault. *See Ratcliff v. City of Detroit*, No. 19-cv-13458, 2021 WL 3032537, at *5 (E.D. Mich. July 19, 2021) (Murphy, J.) ("Without a constitutional violation, there can be no *Monell* claim."). The court will therefore also grant summary judgment, in part: specifically in regard to the *Monell* claim. Given the court's ruling above, Plaintiff cannot pursue a *Monell* claim based on a wrongful arrest theory as the officers' underlying conduct was not unconstitutional.

But the court cannot grant the City summary judgment on the complete *Monell* claim because Plaintiff's complaint also pursued the claim based on an excessive force theory. Plaintiff raised this factual distinction in his response brief, yet Defendants did

19

not file a reply brief addressing the legal issue or Plaintiff's factual contentions. Because Defendants' motion did not address this alternative factual basis for Plaintiff's *Monell*—unconstitutional excessive force—the court will not grant Defendants summary judgment on the entire *Monell* claim. *See Est. of Dojcinovic by Dojcinovic v. Citizens Ins. Co. of the Midwest*, --- F.Supp.3d ----, No. 20-12134, 2022 WL 303668, at *6  n.8 (E.D. Mich. Feb. 1, 2022) (Cleland, J.) (citing *Celotex Corp.*, 477 U.S. at 323) ("Defendan[s'] motion fails to develop this assertion into a full-fledged argument, supported by law and fact, that would support a finding of summary judgment in its favor.").

## IV. CONCLUSION

Plaintiff has failed to show that a genuine dispute of material fact exists as to whether his constitutional rights were violated when Defendant Detroit Police Officer determined they had probable cause to arrest Plaintiff for felonious assault. As a result, summary judgment will be awarded to the Defendants on Plaintiff's wrongful arrest claim and on Plaintiff's *Monell* claim against Defendant City of Detroit to the extent it seeks liability based on a wrongful arrest theory as the court determines no underlying violation occurred. Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment (ECF No. 28) is GRANTED IN PART and DENIED IN PART. It is GRANTED and Summary Judgment will be awarded to Defendants on Count I and on Count III to the extent Plaintiffs pursue a *Monell* claim on a wrongful arrest theory. It is DENIED with respect to Defendants' request for summary judgment on Count III in its entirety.

IT IS FURTHER ORDERED that that Plaintiff shall respond to the court's consideration of summary judgment as to Plaintiff's claims against Defendant Rossingnol by **May 2, 2022**. Defendants may reply by **May 16, 2022**. Parties may submit a stipulation in lieu of briefing.

s/Robert H. Cleland                         /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 18, 2022


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 18, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner                              /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-10302.FOULKS.MSJ.AAB.2.RHC.docx